OPINION
By the Court,
Hardesty, J.:
This case concerns a contract for the sale of Henderson, Nevada, real property. Under the contract, the close of escrow was conditioned on the buyer obtaining commercial subdivision approval with respect to the land. After the parties worked unsuccessfully for approximately three years to obtain the commercial subdivision approval, the sellers, without any warning to the buyer, *346 repudiated the contract and refused to consummate the sale. In the ensuing action instituted by the buyer against the sellers and his real estate agent, who ultimately settled with the buyer, the district court granted specific performance to the buyer and awarded him costs.
In this appeal, we consider whether a party’s performance under a contract must be completed within a certain time when the contract’s terms do not make the time for the party’s performance of the essence. We conclude that when a contract does not make the time for a party’s performance of the essence, either party can make it so by setting a reasonable time for performance and notifying the other party of an intention to abandon the contract if it is not performed within that time. Further, absent such a demand for performance, or a term making time of the essence, a contract must be performed within a reasonable time. What constitutes a reasonable time for a contract’s performance is a question of fact to be determined based on the nature of the contract and the circumstances surrounding its making.
We also consider in this appeal the circumstances under which a party to a contract may waive a condition precedent to his performance so that he can complete his performance under the contract. We conclude that when a contract contains a condition precedent to a party’s performance, that party may waive the condition and tender performance so long as the parties included the condition in the contract for the sole benefit of the party seeking to waive the condition and complete performing his contractual obligations. Whether a condition included in a contract is for the benefit of one or both parties is a question of fact.
Finally, we consider whether costs should be apportioned when one party sues multiple defendants on similar claims based on the same set of facts. We conclude that in such a situation, it is within the district court’s discretion to determine whether the claims are so intertwined as to render apportionment impracticable, but before declaring apportionment impracticable, the district court must make a good faith effort to apportion costs. In light of those considerations, we affirm the district court’s judgment granting specific performance to the buyer. In particular, the sellers did not provide the buyer a reasonable time to complete his performance under the contract, and although the buyer failed to obtain the commercial subdivision approval — a condition precedent to the buyer’s performance — that condition was included in the contract solely for the buyer’s benefit so he was free to waive it and complete performance by tendering the down payment. Nevertheless, because the record in this case does not reveal that the district court made an effort to apportion costs, we reverse its award *347 of costs and remand for further proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY

In 1999, appellants Seaynoah and Helen Mayfield entered into a contract with Satsoy Thay for the sale to Thay of a parcel of land in Henderson, Nevada. Thay subsequently assigned the contract to respondent Ray Koroghli. Koroghli hired real estate agent Ellen Ross to make an offer on the property on his behalf and to represent him in the transaction with the Mayfields. The 1999 contract expired by its own terms after four extensions. Soon after that contract expired, the parties entered into a second contract, on January 5, 2000. The second contract provided for a purchase price of $10 per square foot of “net usable acreage,” with the final price to be calculated after realignment of roadways. The purchase was to be seller financed, with a $1.3 million down payment, secured by a deed of trust for the balance, payable in quarterly installments over 20 years. The second contract also provided for the close of escrow 60 days from the date that Koroghli obtained commercial rezoning and approval for commercial subdivision of the property. The parties included the commercial subdivision condition in the second contract on Koroghli’s insistence, to ensure that he could use the property in the manner he expected. Other than noting that escrow would close 60 days after Koroghli obtained commercial rezoning and subdivision of the property, the second contract did not specify a date by which performance was to occur, nor did it contain a clause declaring time of the essence.
Koroghli retained an engineer, and the parties worked together to obtain rezoning and approval for commercial subdivision of the property. On September 5, 2000, the Henderson City Council rezoned the property. However, by early 2001, the property had still not been approved for commercial subdivision. Koroghli offered to waive the commercial subdivision condition and close on the property. Mr. Mayfield declined to close at that time, insisting that he would assist in obtaining all of the property that the parties anticipated would be added through expected road vacations, road realignments, and a land trade with the City of Henderson. Over the next two years, the parties worked on these issues and Koroghli retained engineering, architectural, and public relations entities to assist in developing the property.
On February 26, 2003, three years after the Mayfields and Koroghli entered into the second contract, Mr. Mayfield, without providing Koroghli notice or a reason, repudiated the contract and refused to sell the property to Koroghli. In response, Koroghli sent Mr. Mayfield a letter indicating that he was “ready, willing and *348 able” to perform, and demanding close of escrow. Mr. Mayfield refused to perform.
Koroghli filed suit against the Mayfields seeking specific performance and against Ross alleging breach of contract and breach of fiduciary duty. The Mayfields asserted cross-claims against Ross. Both Koroghli and the Mayfields reached out-of-court settlements with Ross, and she was dismissed from the case. Following a bench trial, the district court concluded that the Mayfields had breached their contract with Koroghli and that Koroghli was entitled to specific performance. The court found that because the contract did not contain a date by which Koroghli was to obtain commercial subdivision or a clause making time of the essence, the Mayfields were obligated to fix a reasonable time for performance of this condition and communicate that time to Koroghli before they could declare him to be in default. The district court concluded that because the Mayfields did not so notify Koroghli, their repudiation constituted a breach of the contract. The court therefore awarded specific performance to Koroghli. The court also awarded Koroghli costs totaling $52,690.91. This appeal followed.

DISCUSSION

On appeal, the Mayfields assert that the district court’s grant of specific performance was improper because (1) the Mayfields were not required to make a demand on Koroghli to perform by a certain date, and the passage of three years exceeded a reasonable time for performance; and (2) Koroghli did not and cannot tender performance according to the terms of the contract. The Mayfields argue further that the district court erred by awarding costs to Koroghli because the costs should have been apportioned between those incurred in pursuit of claims against the Mayfields versus those incurred in pursuit of claims against Ross.
We review the district’s court’s decisions to grant specific performance and to award costs for an abuse of discretion.[1]

Because time was not of the essence in the parties’ contract, the Mayfields were required to allow Koroghli a reasonable time in which to perform his obligations under the contract

The Mayfields argue that a demand for performance is not necessary unless it is required by the terms or the nature of a contract *349 and that, even if a demand is required, an exception exists when it is apparent that a demand would be unavailing or constitute a useless formality. The Mayfields argue that they were not required to demand performance from Koroghli because doing so would have been futile, since, if Koroghli intended to perform, he would have done so by February 2003.
Although not previously recognized by this court, a fundamental principle of contract law is that the time for performance under a contract is not considered of the essence unless the contract expressly so provides or the circumstances of the contract so imply.[2] If time is not of the essence, the parties generally must perform under the contract within a reasonable time,[3] which “depends upon the nature of the contract and the particular circumstances involved.”[4] Nevertheless, in the absence of a clause making time of the essence, a party’s failure to perform within a reasonable time generally does not constitute a material breach of the agreement.[5] But when a contract does not make time of the essence, one party to the contract may make it so by demanding performance by a certain date or time, so long as the party “fix[es] a reasonable time for the completion of the contract and giv[es] notice to the other party of an intention to abandon the contract unless it is completed within the specified time.”[6] In so doing, the time for a party’s performance becomes a material term of the contract, so that the failure to perform by the time specified usually constitutes and has the legal effect of a material breach.[7] Of course, it would be futile for a party to make a demand “if the other party has repudiated the contract or otherwise indicated [he] refuses to perform.’ ’[8]
The contract between the Mayfields and Koroghli did not expressly make time of the essence. Nor did the circumstances surrounding the making of the contract indicate that the parties intended performance by a certain date to be an essential part of the *350 bargain. Indeed, the parties worked together over a period of three years to complete the transaction. Also, Mr. Mayfield declined Koroghli’s offer, made approximately one year after the parties entered into the contract, to waive the commercial subdivision condition and close the deal. At that time, Mr. Mayfield told Koroghli that he wanted to ensure that Koroghli received the deal for which he had bargained.[9] Based on the terms of the contract and the parties’ behavior and representations, we must conclude that time was not of the essence in their contract.
The Mayfields were entitled to make time of the essence after the formation of the contract by setting a reasonable time for Koroghli’s performance and by communicating that deadline to Koroghli. But the Mayfields did not make such a demand. Had they made such a demand for performance which allowed a reasonable time to close escrow, the Mayfields would have had the right to abandon the contract if Koroghli failed to perform by the stated date. Although they claim they did not make a demand because doing so would have been futile, we reject that contention. Koroghli did not repudiate the contract or otherwise indicate that he did not intend to perform under it. Rather, as the district court found, Koroghli diligently proceeded toward obtaining subdivision approval. Therefore, the Mayfields were not excused on grounds of futility from demanding performance. We thus discern no abuse of discretion in this finding, and we conclude that, because the May-fields did not demand performance and were not excused from doing so on grounds of futility, time was not of the essence in their contract with Koroghli.
Because time was not of the essence, the Mayfields were obligated to allow Koroghli a reasonable time for performance and were not excused from performing under the contract unless Koroghli failed to perform within a reasonable time. The Mayfields argue that the passage of three years exceeds a reasonable time for performance and, therefore, their repudiation was justified. We disagree.
Whether a reasonable time for a contract’s completion has passed is determined by the nature of the contract and the circumstances surrounding its making.[10] Here, although the district court *351 did not make express findings in this regard, it is apparent from the record that a reasonable time for performance had not yet expired.[11] Specifically, the record demonstrates that the Mayfields and Koroghli agreed to enter into a contract for the sale of undeveloped, commercial property. The parties were both experienced in transactions of this kind and were aware of the myriad development and zoning permits necessary to develop the land as agreed. Mr. Mayfield worked alongside Koroghli to obtain the requisite permits and approvals during the three-year period, which he now complains was unreasonable. At no point during those three years did the Mayfields express impatience or frustration as to the length of time that had passed. We conclude that under the circumstances of this case, the passage of three years after the parties’ formation of the contract did not exceed a reasonable time for performance. It follows, therefore, that the Mayfields’ repudiation was not excused and constituted a breach of the contract.

Koroghli tendered performance when he offered to waive the commercial subdivision condition and close on the contract at the time of the Mayfields’ repudiation

The Mayfields argue that the district court’s grant of specific performance was an abuse of discretion because Koroghli did not tender performance, which is a prerequisite to a grant of specific performance. Specifically, the Mayfields contend that Koroghli cannot tender performance according to the terms of the contract because the commercial subdivision requirement has not been fulfilled.
We have previously held that specific performance is available only when: “(1) the terms of the contract are definite and certain; (2) the remedy at law is inadequate; (3) the appellant has tendered performance; and (4) the court is willing to order [specific performance].”[12] If a purchaser of real property has not yet tendered the purchase price, the district court may still grant specific performance if the purchaser can “demonstrate that she is ready, willing, and able to perform.”[13] There is no dispute that, at the time Mr. Mayfield repudiated the contract, Koroghli offered to ten *352 der the agreed-upon purchase price and close escrow. Koroghli thereby adequately demonstrated that he was ready, willing, and able to perform. The Mayfields assert, however, that Koroghli’s purported tender of performance was deficient because the commercial subdivision condition was never fulfilled. They further argue that Koroghli did not have the right to unilaterally waive the commercial subdivision condition because it was for the benefit of both parties. We disagree.
A party may waive a condition in a contract if the condition was included in the contract for his or her benefit.[14] Whether a particular condition is for the benefit of one or both parties is a question of fact.[15] Such a determination involves examination of the facts and circumstances of the particular case as well as the language of the contract at issue.[16] “The test is whether the condition was intended by both parties to be included in the contract for the benefit of both parties, not whether the condition was in fact of a benefit to both parties.”[17]
In this case, the district court found that the commercial subdivision condition was included at Koroghli’s request to ensure that the property could be used in the manner expected by Koroghli. The district court based that finding on Mr. Mayfield’s testimony that the parties added the condition at Koroghli’s request. We determine that the district court did not abuse its discretion by finding that the parties included the commercial subdivision requirement in the contract solely for Koroghli’s benefit. Although the Mayfields argue now that the condition could have benefited them because, if satisfied, it would make the property more valuable in case Koroghli defaulted on his financial obligations under the contract, the proper inquiry focuses on the parties’ intent in adding the condition at the time of contracting.[18] That the condition may have later benefited the Mayfields is inapposite. Because the parties included the condition at the time of the contract solely for Koroghli’s benefit, Koroghli could unilaterally waive it. His offer to waive the condition and tender performance of the purchase price at the time of Mr. Mayfield’s repudiation was thus satisfactory *353 proof that he was ready, willing, and able to perform. The district court did not abuse its discretion by granting specific performance to Koroghli. We therefore affirm the district court’s judgment granting specific performance.

The district court must attempt to apportion the costs incurred in litigating against Ross and the costs incurred in litigating against the Mayfields

The Mayfields argue that the district court erred by failing to apportion the costs awarded to Koroghli between those incurred in pursuit of claims against the Mayfields versus costs incurred in pursuit of claims against Ross before she settled with the parties. The Mayfields argue that the award of costs should be reduced by 50 percent since Ross was dismissed from the action after much of the litigation had already taken place. Koroghli argues that apportionment is impracticable and not required when claims pursued against multiple parties are substantially intertwined, as were his claims against the Mayfields and Ross.
We have not previously considered the propriety of apportioning costs when the prevailing party pursued similar claims, based on the same factual circumstances, against multiple defendants. The California Court of Appeal faced a similar problem in Abdallah v. United Savings Bank.[19] In Abdallah, the court affirmed an award of attorney fees to the prevailing party in an action in which fees were authorized for only one of three claims pursued. The court explained that apportionment was not mandatory in such an instance, as the district court could reasonably have concluded that the claims were so “ ‘inextricably intertwined’ ”[20] as to make it “ ‘impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units.’ ’ ’[21] We adopt the Abdallah court’s reasoning and hold that, in an action in which a plaintiff pursues claims based on the same factual circumstance against multiple defendants, it is within the district court’s discretion to determine whether apportionment is rendered impracticable by the interrelationship of the claims against the multiple defendants. The district court must, however, attempt to apportion the costs before determining that apportionment is impracticable. When attempting to apportion costs, the dis *354 trict court must make specific findings, either on the record during oral proceedings or in its order, with regard to the circumstances of the case before it that render apportionment impracticable.
In this case, the district court found that Koroghli’s claims against the Mayfields and Ross were so intertwined that apportionment was impracticable. However, the record does not reflect that the district court attempted to apportion the costs before making its finding. We therefore reverse the award of costs to Koroghli and remand this matter to the district court for it to consider the practicability of apportioning costs.[22]

CONCLUSION

We affirm the district court’s judgment granting specific performance because the Mayfields were not excused from performing under the contract and Koroghli showed that he was ready, willing, and able to perform. However, we determine that the district court abused its discretion by failing to attempt to apportion the costs Koroghli incurred while litigating against the Mayfields from those costs he incurred while litigating against Ross. Accordingly, we reverse the award of costs to Koroghli and remand this matter to the district court for it to consider apportionment of any costs awarded to Koroghli consistent with the rule adopted in this opinion.[23]
Parraguirre and Douglas, JJ., concur.

 Serpa v. Darling, 107 Nev. 299, 304, 810 P.2d 778, 782 (1991) (reviewing a district court’s denial of specific performance for an abuse of discretion); Borgerson v. Scanlon, 117 Nev. 216, 221, 19 P.3d 236, 239 (2001) (reviewing a district court’s award of costs for an abuse of discretion).

 See 15 Richard A. Lord, Williston on Contracts § 46:3, at 399-404 (4th ed. 2000).

 Stratton v. Tejani, 187 Cal. Rptr. 231, 235 (Ct. App. 1982).

 Mohr Park Manor, Inc. v. Bank of Nevada, 87 Nev. 520, 522, 490 P.2d 217, 218 (1971).

 See Zancanaro v. Cross, 339 P.2d 746, 749 (Ariz. 1959); Deep Nines, Inc. v. McAfee, Inc., 246 S.W.3d 842, 846 (Tex. App. 2008).

 See 15 Richard A. Lord, Williston on Contracts § 46:16, at 484-85 (4th ed. 2000).

 See O’Malley v. Cummings, 229 N.E.2d 878, 880-81 (Ill. App. Ct. 1967); New Colony Homes v. Long Island Property, 803 N.Y.S.2d 615, 616 (App. Div. 2005).

 In re K-Com Micrographics, Inc., 159 B.R. 61, 64 (Bankr. D.C. 1993).

 Mr. Mayfield told Koroghli that he did not want to sell him a “pig in a poke,” or, in other words, Mayfield did not want to sell Koroghli something other than what he bargained for.

 Mohr Park Manor, Inc. v. Bank of Nevada, 87 Nev. 520, 522, 490 P.2d 217, 218 (1971).

 Butler v. Bayer, 123 Nev. 450, 460 n.22, 168 P.3d 1055, 1062 n.22 (2007) (“ ‘[T]his court will affirm the order of the district court if it reached the correct result, albeit for different reasons.’ ” (quoting Rosenstein v. Steele, 103 Nev. 571, 575, 747 P.2d 230, 233 (1987))).

 Serpa v. Darling, 107 Nev. 299, 305, 810 P.2d 778, 782 (1991).

 Id. at 304, 810 P.2d at 782.

 Silver Dollar Club v. Cosgrijf Neon, 80 Nev. 108, 111, 389 P.2d 923, 924 (1964).

 See Pelligreen v. Wood, 111 S.W.3d 446, 451 (Mo. Ct. App. 2003); Crescenta Valley Moose Lodge No. 808 v. Bunt, 87 Cal. Rptr. 428, 431 (Ct. App. 1970).

 Pelligreen, 111 S.W.3d at 451.

 Id.

 The Mayfields never argued that the seller financing would be impaired as a consequence of not securing commercial subdivision approval.

 51 Cal. Rptr. 2d 286, 293 (Ct. App. 1996).

 Id. (quoting Finalco, Inc. v. Roosevelt, 3 Cal. Rptr. 2d 865, 869 (Ct. App. 1991)).

 Id. (quoting Fed-Mart Corp. v. Price, 168 Cal. Rptr. 525, 532 (Ct. App. 1980)).

 We note that a disparity exists between the amount of costs awarded by the district court at the hearing on the Mayfields’ motion to retax and settle costs — $51,629.09—and the amount of costs listed in the judgment on costs— $52,690.91. The district court should rectify this inconsistency on remand.

 Having considered all of the Mayfields’ contentions, we conclude that their remaining arguments lack merit.